# United States Court of Appeals
## For the First Circuit

No. 06-1167

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM J. BENNETT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

Christopher R. Goddu, Federal Defender Office, District of
Massachusetts, with whom Kevin Fitzgerald, Federal Defender Office,
District of Rhode Island, was on brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Robert Clark Corrente, United States Attorney, and Zechariah
Chafee, Assistant United States Attorney, was on brief, for
appellee.

November 21, 2006

TORRUELLA, **Circuit Judge**. Defendant-appellant William J. Bennett ("Bennett") pled guilty to possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He now appeals the sentencing enhancements applied pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), on the basis that (1) the predicate conviction for breaking and entering a steel storage shed does not constitute a violent felony, (2) his Sixth Amendment rights were violated when the judge, rather than a jury, determined that the conviction constituted a violent felony, and (3) his Fifth and Sixth Amendment rights were violated when the Government failed to properly plead and prove the ACCA enhancements. We find no merit to these arguments and therefore affirm the district court's decision.

## I. Background

On March 15, 2005, the Westerly, Rhode Island police retrieved a stolen 9 mm handgun, which they were told had been purchased from Bennett. Bennett later admitted to selling the gun. On June 15, 2005, a federal grand jury returned a one-count indictment charging Bennett with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Bennett entered into a plea agreement with prosecutors on August 22, 2005 and pled guilty to the charge on September 15, 2005.

Based on three prior Rhode Island convictions for breaking and entering and related crimes, the United States

-2-

Probation Office ("USPO") concluded that Bennett was subject to a mandatory minimum sentence of 180 months under the ACCA.[1] Bennett objected to the USPO's determination, arguing that his 1994 Rhode Island conviction for breaking and entering a steel storage shed did not constitute a crime of violence and therefore did not qualify as a predicate for the ACCA sentencing enhancement.

At the plea colloquy, the state prosecutor stated that the government would be prepared to prove at trial that the defendant "entered a steel storage shed . . . belonging to [another] with intent to commit larceny in the nighttime." Bennett agreed with this statement. Based on a reading of the statute under which Bennett was convicted and the record before the court, the district court found that Bennett was properly classified as an armed career criminal and sentenced him to 180 months imprisonment.

## II.  Discussion

### A.  The Taylor Definition of "Burglary"

Under the ACCA, a defendant who violates § 922(g)(1) and has three previous convictions for violent felonies or serious drug offenses is subject to a minimum sentence of 180 months. 18 U.S.C. § 924(e)(1).  The definition of "violent felony" includes, inter alia, the crime of burglary, but the term "burglary" itself is not defined in the statute.  Id. § 922(e)(2).

---

[1]  Absent the USPO's determination that Bennett was an armed career criminal, Bennett would have been subject to an advisory guideline range of 24-30 months.

The Supreme Court, however, addressed the meaning of burglary as used in the ACCA in United States v. Taylor, 495 U.S. 575 (1990). The Court first rejected both the view that the definition depends on the label adopted by the state of conviction and the idea that Congress meant to include only the common-law definition of burglary as "breaking and entering of a dwelling at night, with intent to commit a felony." Id. at 592. Rather, the Court concluded that

> Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most states. Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.

Id. at 598. Thus, an offense qualifies as "burglary" for purposes of an ACCA sentencing enhancement if it "substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." Id. at 602.

In assessing whether a state conviction qualifies as generic burglary, a court should take a categorical approach, "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. at 600. When the state statute defines burglary more broadly than the generic definition, however, the court may then look to whether

-4-

the jury was required to find all the elements of generic burglary. Id. at 602.

Defendant contends that his conviction for breaking and entering a steel storage shed does not meet the definition of generic burglary under Taylor, and therefore does not constitute a violent felony as determined by the district court, for two reasons: First, he argues that to qualify as a "building or other structure" under the Taylor definition, the building or structure must be "occupiable."[2]  Second, he argues for the first time on appeal that the statute under which he was convicted for the predicate offense did not include an "unlawful or unprivileged entry" element as required by Taylor.

## 1. "Building or other structure"

We review the determination that a defendant is subject to an ACCA sentencing enhancement de novo, United States v. Mastera, 435 F.3d 56, 59 (1st Cir. 2006), but we review the district court's factual findings underlying the determination for clear error, United States v. Delgado, 288 F.3d 49, 52 (1st Cir. 2002).  We begin our review with the Rhode Island statute under which Bennett was convicted for the predicate crime at issue,

---

[2]  There is some question as to whether Bennett preserved this argument for appeal.  He certainly did not develop the argument very well, focusing instead on whether his conviction satisfied the "otherwise" clause of 18 U.S.C. § 924(e)(2)(B)(ii), but we will assume for purposes of this decision that he did preserve the argument below.

entitled "Breaking and entering other buildings with criminal intent - Railroad cars - Tractor trailers." R.I. Gen. Laws § 11-8-5. The first clause of the statute makes it unlawful to "break and enter or enter in the nighttime, with intent to commit [a crime] in it, any barn, stable, carriage house, or other building." Id. The second clause addresses the similar breaking and entering of railroad cars and tractor trailers. Id.

Because the statute defines burglary more broadly than Taylor did, including the breaking and entering of more than just buildings and structures, we look to the record before the court to determine under which clause Bennett was convicted.[3] The transcript of the plea colloquy clearly shows that Bennett was convicted under the first clause of the statute, involving the burglary of "other buildings," and therefore we base our determination of whether the conviction qualifies as generic burglary on the elements required for conviction under the "other buildings" clause.

Bennett contends that to meet the Taylor definition of generic burglary, the structure involved in a predicate crime must be "occupiable," in the sense that it must be large enough to

---

[3] In examining the record, a court is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard v. United States, 544 U.S. 13, 26 (2005).

accommodate a person. He points to a Ninth Circuit case, United States v. Sparks, 265 F.3d 825, 835 (9th Cir. 2001), which found that the burglary of a storage locker that would not accommodate a person does not fall within the definition of generic burglary. Bennett also asserts that Rhode Island law suggests a requirement of habitability or occupiable space.

The types of buildings to which the Rhode Island statute refers, such as barns, stables, and presumably, steel storage sheds, clearly fit within Taylor's definition of generic burglary; they are, by the plain language of the statute, "buildings or other structures." They clearly do not comprise such items as automobiles, boats, railroad cars, tents, or vending machines, which Taylor rejected as "structures" for purposes of generic burglary. Taylor also rejected the idea that state law defines the contours of burglary under the ACCA, and therefore we decline to look to Rhode Island law to resolve this question. Furthermore, Sparks is inapposite, because the statute at issue plainly concerns the burglary of "buildings" as opposed to smaller enclosed spaces such as storage lockers. Bennett was convicted of "entering" into a steel storage shed, and therefore we know that the structure was large enough to be entered by a person. Thus this case does not raise any issue about structures not large enough to permit human entry.

-7-

## 2. "Unlawful or unprivileged entry"

Bennett next contends that his conviction for breaking and entering a steel storage shed does not meet Taylor's definition because the statute under which he was convicted did not require an "unlawful or unprivileged" entry, and the record before the court did not indicate that his entry was "unlawful or unprivileged." Bennett did not raise this issue below and therefore we review for plain error. United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). We have not addressed the contours of the "unlawful or unprivileged" element of generic burglary under Taylor, and there exists a circuit split on the issue. Compare United States v. Bowden, 975 F.2d 1080, 1084-85 (4th Cir. 1992) (finding that "the entry of a man who enters without breaking with intent to commit a felony or larceny is neither lawful nor privileged, so it must be within Taylor"), with United States v. Maness, 23 F.3d 1006, 1008-09 (6th Cir. 1994) (finding that the same statute at issue in Bowden "does not satisfy Taylor's definition of generic burglary" because intent to commit a crime is a "separate and distinct element[]" from unlawful or unprivileged entry). In light of conflicting case law, any error that might have been committed by the district court was not "obvious," and therefore not plain error. United States v. Olano, 507 U.S. 725, 734 (1993) ("At a minimum, court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.").

-8-

## B. Constitutional and statutory claims

Bennett's remaining two claims merit little discussion. First, he claims that his Sixth Amendment rights were violated because the judge, rather than a jury, determined that his predicate conviction constituted a violent felony. Bennett suggests that United States v. Booker, 543 U.S. 220 (2005), requires that the nature of his conviction be determined beyond a reasonable doubt by a jury. We very recently rejected the position that a jury must determine whether a prior conviction is a violent felony for purposes of a sentencing enhancement; the determination is a question of law and therefore for the court, not the jury. United States v. Bishop, 453 F.3d 30, 32 (1st Cir. 2006).

Second, Bennet claims that his Fifth and Sixth Amendment rights were violated because the Government failed to properly plead and prove the ACCA enhancements. He asks us to find that as a matter of statutory construction, the ACCA requires the Government to charge his prior convictions in an indictment and prove them beyond a reasonable doubt. Bennett concedes that he did not raise this issue below. We thus review for plain error, which requires that the defendant show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60. The district court committed no obvious

error, since the text of the ACCA says nothing about pleading and proof of predicate convictions.  Furthermore, we recently rejected in <u>United States</u> v. <u>McKenney</u> the constitutional argument that the Government must charge predicate convictions under the ACCA in an indictment, reiterating that "[t]he Supreme Court has rejected the argument that under the Constitution, recidivism must be treated as an element of the offense, included in the indictment, and proved to a jury beyond a reasonable doubt."  450 F.3d 39, 45-46 (1st Cir. 2006) (citing <u>Almendarez-Torres</u> v. <u>United States</u>, 523 U.S. 224, 239 (1998)).  As a result, the district court did not commit plain error in failing to apply the doctrine of constitutional avoidance by reading into the ACCA Bennett's proposed requirement.  There is no constitutional issue and therefore nothing to avoid.

### III.  <u>Conclusion</u>

For the reasons stated above, we affirm the sentence imposed by the district court.

**Affirmed**.