# United States Court of Appeals

## For the First Circuit

No. 05-2763

UNITED STATES OF AMERICA,

Appellee,

v.

GARY W. MILLER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya, Senior Circuit Judge,
and Howard, Circuit Judge.

Edward C. Roy, Jr., Assistant Federal Public Defender, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Zechariah Chafee, Assistant United States Attorney, were on brief, for appellee.

February 26, 2007

**SELYA**, **Senior Circuit Judge**.  Following the entry of a guilty plea, defendant-appellant Gary W. Miller was sentenced to a 180-month incarcerative term under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).  On appeal, Miller argues (i) that the district court improperly relied upon a state court transcript in establishing one of the underlying convictions needed to engage the gears of the ACCA; (ii) that there was insufficient evidence to support a finding that he had been convicted of such a predicate offense; and (iii) that in all events, the ACCA enhancement violated his Fifth and Sixth Amendment rights.  Concluding, as we do, that these arguments lack force, we affirm the sentence.

The facts are uncomplicated.  On June 3, 2005, Miller pleaded guilty to a single-count indictment charging him with being a felon in possession of a handgun, in violation of 18 U.S.C. § 922(g)(1).  At the disposition hearing, the government claimed that Miller should be sentenced as an armed career criminal.  Miller disputed that claim.

Under the ACCA, a defendant such as Miller who has three prior "violent felony" convictions is subject to a mandatory minimum sentence of fifteen years.  See id. § 924(e)(1).  Both sides ultimately agreed that Miller had at least two prior convictions for violent felonies.  They disagreed, however, as to whether a third conviction — a 2000 Connecticut state court conviction for third-degree burglary — constituted a countable

predicate under the ACCA. Refined to bare essence, the parties' disagreement (and, hence, the issue of ACCA coverage) centered on the nature of this burglary conviction. We briefly explain the parameters of the dispute.

A conviction for burglary may constitute a conviction for a violent felony within the purview of the ACCA. See id. § 924(e)(2)(B)(ii). Burglary is not statutorily defined in the ACCA context, but the Supreme Court has held that, for purposes of section 924(e), burglary means generic burglary; that is, "an unlawful or unprivileged entry into, or remaining in, a building or other structure with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599 (1990). The Connecticut statute underpinning Miller's conviction is not limited to generic burglary. Although the statute of conviction defines third-degree burglary as "enter[ing] or remain[ing] unlawfully in a building with the intent to commit a crime," Conn. Gen. Stat. § 53a-103(a), a related statute expands the ordinary definition of "building" to include, among other things, vehicles, watercraft, and railroad cars, see id. § 53a-100. Therein lies the problem: typically, a conviction for burglary involving, say, a car, boat, or railroad car would not constitute a generic burglary conviction and, therefore, would not constitute an ACCA predicate.[1] See, e.g.,

---

[1]Taylor leaves open the possibility that a burglary conviction involving a non-building that has been converted to a dwelling (for example, a houseboat) might qualify as an ACCA predicate offense.

-3-

United States v. Bennett, 469 F.3d 46, 50 (1st Cir. 2006); United States v. Mastera, 435 F.3d 56, 60-61 (1st Cir. 2006).

Faced with the need to determine the nature of Miller's third-degree burglary conviction, the district court reviewed the transcript of the state court change-of-plea colloquy. The district court focused particularly on the state judge's summarization of the crime as a "break-in at Trader Jack's [involving] a safe." The district court also noted that, during the same proceeding, the state judge at one point said that he would impose a suspended sentence of five years with three years of probation, and then added that Miller should "[s]tay out of Trader Jack's and all the other stores that he wasn't charged with, even" (emphasis supplied). Based on these statements, the district court, while acknowledging that it was "a close call," found sufficient evidence to ground a conclusion that Miller's third-degree burglary conviction involved the burglary of a building (i.e., a store) and thus comprised a third ACCA predicate. The district court proceeded to sentence Miller as an armed career criminal and imposed a 180-month incarcerative term. This timely appeal followed.

In this venue, Miller advances three assignments of error. First, he argues that the district court should not have

See 495 U.S. at 593, 599. This case does not require us to explore that possibility.

-4-

relied upon the change-of-plea colloquy in determining the factual contours of his Connecticut state court conviction because he did not assent to the facts adverted to by the state judge. Second, he argues that even if the district court appropriately consulted the colloquy, there was insufficient evidence to warrant a finding that the burglary involved a building. Third, he argues that the finding that the Connecticut burglary involved a building was made in derogation of his constitutional rights because that fact was neither admitted by him nor proven to a jury beyond a reasonable doubt.

We review Miller's legal claims de novo. See Mastera, 435 F.3d at 59. In the process, however, we review the district court's factual findings for clear error. See Bennett, 469 F.3d at 49; United States v. Delgado, 288 F.3d 49, 52 (1st Cir. 2002).

Our mode of analysis is familiar. The Supreme Court has articulated a two-tier categorical approach for determining whether a prior conviction is for a violent felony within the meaning of the ACCA. See Taylor, 495 U.S. at 599-603; see also United States v. Richards, 456 F.3d 260, 262-63 (1st Cir. 2006). Under this approach, an inquiring court, confronted with a prior burglary conviction, must first examine whether the conviction was based upon a statute that dovetails with the definition of generic burglary. See Bennett, 469 F.3d at 49. If it does, the inquiry ends and the prior conviction may be used as an ACCA predicate.

Id. Where, as here, the underlying statute sweeps more broadly and defines burglary in terms that encompass but exceed the parameters of the generic definition, the court must move to the second step of the Taylor pavane in order to determine if "the particular conviction actually embodied every element of a violent felony." Richards, 456 F.3d at 262.

The second step is not a free-style exercise. In taking that step, the court must restrict its inquiry to documents within the carapace of the record of conviction, such as "the charging document, the terms of the plea agreement or transcript of the colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information." Shepard v. United States, 544 U.S. 13, 26 (2005); cf. Conteh v. Gonzales, 461 F.3d 45, 53 (1st Cir. 2006) (discussing contours of "record of conviction" in an analogous context). In describing this second step, the Shepard Court indicated that the inquiry is "generally limited" to the materials mentioned above "and any explicit factual finding by the trial judge to which the defendant assented." 544 U.S. at 16.

Miller's first argument seizes upon this comment. He asserts that a defendant's express assent to the factual basis for a guilty plea is necessary if any portion of the plea colloquy is to be used at the second step of the Taylor analysis. Because he never assented to the state judge's characterization of the factual

basis for his third-degree burglary conviction, this thesis runs, the district court's reliance upon that characterization was impermissible.

We assume for argument's sake, but do not decide, that a defendant's assent to particular portions of a plea colloquy is needed before those statements can be used at the second step of a Taylor analysis. Even so, Miller's argument fails because his factual premise — that he never assented to the state judge's characterization — is faulty. Our reasoning follows.

The law of evidence long has recognized "adoptive admissions." See, e.g., Fed. R. Evid. 801(d)(2)(B). This doctrine provides that, in certain circumstances, a party's agreement with a fact stated by another may be inferred from (or "adopted" by) silence. See id.; see also United States v. Fortes, 619 F.2d 108, 115 (1st Cir. 1980). Such an inference may arise when (i) a statement is made in a party's presence, (ii) the nature of the statement is such that it normally would induce the party to respond, and (iii) the party nonetheless fails to take exception. See United States v. Higgs, 353 F.3d 281, 309-10 (4th Cir. 2003). In such an instance, the statement may be considered "adopted" by virtue of the party's failure to respond. See, e.g., United States v. Negrón-Narváez, 403 F.3d 33, 39 (1st Cir. 2005); cf. United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir. 1993) ("A defendant that accepts . . . without contesting the facts set forth in the

-7-

[presentence] report can scarcely be heard to complain when the sentencing court uses those facts to make its findings.").

This doctrine is applicable here. The transcript of the change-of-plea hearing indicates that the state judge, after describing the case as one that involved "a break-in at Trader Jack's with a safe" and instructing Miller to "[s]tay out of Trader Jack's and all the other stores," asked him if "[he] had enough time to think about this." Miller replied in the affirmative, but did not undertake to correct the judge's characterization. The transcript reveals that the judge afforded Miller multiple opportunities to speak on the subject. Miller consistently refrained from any qualification or correction of the factual predicate upon which the judge's remarks rested.

Under these circumstances, we believe that Miller had ample opportunity to take exception to particular facts with which he disagreed. He chose not to contest any of the facts that had been recounted by the state judge. Given these exchanges, we think it fair to conclude that Miller, by his silence, adopted those facts (and, therefore, assented to their accuracy). Cf. United States v. Smith, 390 F.3d 661, 665-66 (9th Cir. 2004) (holding that defense counsel conceded as true the prosecutor's factual characterization of an offense where counsel failed to contest the matter). Taking all aspects into account, we find no error in the

district court's conclusion that Miller's burglary conviction related to a qualifying structure.

Miller's next argument is case-specific. He claims that, even if the district court properly considered the transcript, the evidence was insufficient to ground a finding that Trader Jack's was a store (and, thus, a qualifying structure within the generic definition of burglary and the purview of the ACCA). He offers no real support for this argument beyond suggesting that he might have burglarized something other than a store. A Taylor analysis is categorical, but an inquiring court has the right to draw reasonable inferences from the evidence. See, e.g., Bennett, 469 F.3d at 50. The court is not required either to wear blinders or to leave common sense out of the equation.

Here, given the references to Trader Jack's as a store containing a safe, we believe that the district court drew a reasonable inference and rendered a logical conclusion: that Trader Jack's was a store and, thus, a building. That determination was not clearly erroneous, and the court was not required to abandon it merely because Miller conjured up a speculative possibility. See United States v. Beasley, 442 F.3d 386, 393 (6th Cir. 2006) (explaining that a common sense factual determination cannot be overcome simply by pointing to "some lingering metaphysical doubt").

Miller's final argument need not detain us. He hypothesizes that his constitutional rights were abridged because he did not admit, and the government did not prove to a jury beyond a reasonable doubt, his Connecticut state court conviction (or any other conviction, for that matter). We recently have rejected this precise argument. See United States v. Coplin, 463 F.3d 96, 104-05 (1st Cir. 2006); United States v. McKenney, 450 F.3d 39, 45-46 (1st Cir. 2006); see also United States v. Jiménez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006) (en banc). That result was a foregone conclusion under current Supreme Court precedent. See Almendarez-Torres v. United States, 523 U.S. 224, 239 (1998).

We need go no further. For the reasons elucidated above, we uphold Miller's sentence.

**Affirmed**.